**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WALID ESMAT MITWALLI, | : | Civil No. 1:24-CV-00336 |
| Plaintiff, | : | |
| v. | : | |
| DR. LAUREL HARRY, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

# MEMORANDUM

Before the court is Defendants' motion for summary judgment in this action arguing that Walid Esmat Mitwalli ("Plaintiff") did not exhaust his administrative remedies. (Doc. 48.) Also pending are Defendants' motion to bifurcate briefing so as to allow additional dispositive motions should the claim survive the pending motion for summary judgment, Plaintiff's motion to compel discovery pertaining to the cost of religious meals, and Plaintiff's motion to extend the discovery deadline in this action. (Docs. 46, 52, 53.) The court cannot make a determination regarding exhaustion on the record as it currently stands and will deny the motion for summary judgment without prejudice. The court will grant Defendants' motion to bifurcate the briefing schedule to address the issue of exhaustion prior to considering the issues raised in the complaint on their merits. Plaintiff's motion to compel discovery pertaining to the cost of religious meals and motion for an extension of time will be denied as Plaintiff's requests are overly broad. However,

if the action survives Defendants' affirmative defense of exhaustion, the court is willing to entertain a motion to reopen discovery at that time.

## PROCEDURAL HISTORY AND BACKGROUND

Plaintiff, an inmate currently housed at the State Correctional Institution in Waymart, Pennsylvania ("SCI-Waymart"), initiated this action by filing a complaint under 42 U.S.C. § 1983 in February of 2024. (Doc. 1.) The complaint named two defendants: (1) Dr. Laurel Harry ("Harry"), Secretary of the Department of Corrections; and (2) Rev. Ulli Klemm ("Klemm"), Religious Services Administrator. (Doc. 1, pp. 1–2.)[1] Plaintiff alleged that the Acting Security of the Department of the Corrections ("DOC"), George M. Little, issued a memo on February 24, 2022, stating the following:

> Beginning January 1, 2023, faith groups accommodated with Ceremonial Meals will instead be accommodated with up to two (2) Fellowship Meals a year. Fellowship Meals permit inmates from those faith groups to provide input on the mainline "best meal" to be served at two holy day observances per year; however, optional menu items will no longer be available. Additionally, members of each faith group will be able to eat together and afterwards engage in thirty (30) minutes of fellowship, provided communal gatherings are permitted at that time.

(*Id*., p. 2.) Plaintiff alleged that he filed a religious accommodation request on April 14, 2023, which was denied by Defendant Klemm on August 25, 2023. (*Id*.) Plaintiff alleged that he filed a grievance on September 1, 2023. (*Id*., p. 3.) This

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

grievance was denied on October 2, 2023, and Plaintiff appealed the denial. (*Id.*) The grievance was ultimately denied by the Secretary's Office of Inmate Grievance Appeals on November 15, 2023. (*Id.*) Also on November 15, 2023, Defendant Harry issued a policy modification memo that changed the overall limits of Former Secretary Little's memo. (*Id.*)

Plaintiff alleged that Defendants violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in both the issuance of the memo and the failure to permit the Eid feasts to move forward in accordance with the Islamic traditions and religious requirements. (*Id.*, p. 3.) As relief, Plaintiff seeks compensatory damages and injunctive relief. (*Id.*, pp. 12–13.)

The court issued an order serving the complaint on Defendants on April 3, 2024. (Doc. 10.) On June 3, 2024, Defendants filed a motion to partially dismiss the complaint. (Doc. 14.) On December 27, 2024, the court granted the motion and dismissed all RLUIPA claims against Defendants in their individual capacities and all claims for monetary relief against Defendants in their official capacities under the RLUIPA. (Docs. 18, 19.) This leaves only the RLUIPA claims against Defendants in their official capacities with only injunctive and declaratory relief available. Defendants then answered the complaint regarding the remaining claims. (Doc. 20.) The court entered a case management order setting forth the deadlines for fact discovery and dispositive motions. (Doc. 21.)

On April 10, 2025, Defendants filed a suggestion of mootness alleging that on March 5, 2025 Defendant Harry issued a policy modification memo that approved the accommodation of two Religious Meals for all qualifying faith groups, including Muslims, and Plaintiff's claims for injunctive and declaratory relief are now moot. (Doc. 23.) Attached to the filing were the updated Religious Activities Procedures Manual and a Declaration by Defendant Harry. (Docs. 23-1, 23-2.) On July 8, 2025, the court entered an order denying Defendants' suggestion of mootness finding that Defendants did not meet their burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. (Docs. 29, 30.)

Following a status conference in this action on July 21, 2025, the court reset the fact discovery deadline to September 30, 2025 and the dispositive motions deadline to October 31, 2025. (Doc. 34.) On September 16, 2025, the court received and docketed Plaintiff's motion to compel production of documents and a brief in support. (Doc. 37.) On October 31, 2025, the court extended the deadline for dispositive motions to January 9, 2026. (Doc. 41.) On November 12, 2025, the court denied Plaintiff's motion to compel, but reopened discovery until December 12, 2025 to gather evidence concerning costs and extended the dispositive motions deadline to January 9, 2026. (Docs. 42, 43.)

On January 6, 2026, Defendants filed their motion for summary judgment and motion to bifurcate the issue of administrative exhaustion from the other issues raised in the complaint. (Docs. 46, 48.) On January 27, 2026, the court received and docketed Plaintiff's motions to compel evidence concerning costs and filed another motion for an extension of time and to reopen discovery. (Docs. 52, 53.) The court will now address these pending motions.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Waymart in Wayne County, Pennsylvania, which is located in this district. *See* 28 U.S.C. § 118(b).

## ISSUES OF MATERIAL FACTS

Presently before the court is the question of administrative exhaustion. Therefore, the court will limit the facts addressed in this memorandum to resolve the issue before the court.

### A. Defendants' Statement of Material Facts

According to Defendants' statement of material facts, Plaintiff filed two grievances concerning religious meals: (1) Grievance No. 1028334; and (2)

Grievance No. 1050534. (Doc. 51-2, 51-3, 51-4.) Grievance No. 1028334 was appealed to final review before the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), but was dismissed on June 28, 2023 stating "[y]ou have not provided this Office with required and/or legible documentation for proper review." (Doc. 51-2, 51-3.) The dismissal further states the following:

> This office has not received any of the required documentation for a proper appeal to final review. Therefore, your appeal to this office is dismissed. Future correspondence regarding this matter may go filed without action or response. You are encouraged to review the DC ADM 804 in its entirety to ensure you are fully familiarized with the grievance process and procedures.

(Doc. 51-3.) Defendants submitted copies of the Final Appeal Decision Dismissal and the Inmate Appeal to Final Review Grievance with their motion. (*Id.*)

Similarly, Grievance No. 1050534 was appealed to final review before SOIGA, but was dismissed on November 15, 2023 stating "[y]ou have not provided this Office with required and/or legible documentation for proper review." (Doc. 51-4.) The dismissal further states the following:

> This office has not received any of the required documentation for a proper appeal to final review; specifically, a copy of your initial grievance, the rejection notice, your resubmitted grievance, the initial review response, your appeal to the Facility Manager or their response. Therefore, your appeal to this office is dismissed. Future correspondence regarding this matter may go filed without action or response. You are encouraged to review the DC ADM 804 in its entirety to ensure you are fully familiarized with the grievance process and procedures.

**B. (*Id.*) Defendants submitted copies of the Final Appeal Decision Dismissal and the Inmate Appeal to Final Review Grievance with their motion. (*Id.*)Plaintiff's Statement of Material Facts**

Plaintiff's response to the statement of material facts concedes that he did not provide the required materials on final appeal for Grievance No. 1028334. (Doc. 57, p. 2; Doc. 58.) Plaintiff provides a wholistic timeline demonstrating that both grievances were part of a continual process to address the February 24, 2022 memo making changes to the religious feasts. (Docs. 57, 58.)

Plaintiff has submitted evidence that he submitted Grievance No. 1028334 on April 8, 2023 challenging the February 24, 2022 changes to the celebration of religious holidays. (Doc. 58-3.) This grievance was denied on April 14, 2023 because no formal religious accommodation request was filed. (*Id.*) Plaintiff then filed a religious accommodation request form submitted on April 14, 2023. (Doc. 58-2, p. 2.) This religious accommodation request was denied on August 25, 2023. (*Id.*, p. 3.) Plaintiff then filed Grievance No. 1050534 on September 1, 2023. (*Id.*, p. 4.) Grievance No. 1050534 was denied on September 26, 2023. (*Id.*, p. 5.) Petitioner then appealed Grievance No. 1050534 to the Facility Manager on the same date. (*Id.*, p. 6.) The denial of Grievance No. 1050534 to the Facility Manager was upheld on October 2, 2023. (*Id.*, p. 7.) The following day, Plaintiff appealed the October 2, 2023 decision on Grievance No. 1050534 to the SOIGA. (*Id.*, p. 8.) On November 15, 2023, the final appeal of Grievance No. 1050534 was

denied stating "[y]ou have not provided this Office with require and/or legible documentation for proper review." (*Id.*, p. 9.) Attached to the complaint is a November 15, 2023 memo from Defendant Harry adjusting the rules surrounding religious meals. (Doc. 1-1, pp. 11–12.)

Plaintiff clearly asserts that he provided the required documents to SOIGA in the appeal of Grievance No. 1050534. (*Id.*) Plaintiff attached an affidavit stating that when he sent the final appeal to SOIGA, he enclosed copies of the initial grievances, the initial response, the appeal to the Facility Manager, and the decision of that appeal. (Doc. 58-1.) Plaintiff also attached the postage for the appeal packet totaling $2.58. (Doc. 58-1, 58-2, pp. 11–12.)

Therefore, there appears to be an issue of material fact concerning what was included in the appeal packet sent to the SOIGA in regards to Grievance No. 1050534.

## STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A

dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that

there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendants argue that while Plaintiff appealed the two grievances through to the final level at the SOIGA, he did not fully exhaust administrative remedies because he did not submit the required materials as part of the appeal with respect to both grievances. (Doc. 50.) Plaintiff concedes that he did not submit all the required documents in the initial Grievance No. 1028334, but asserts that he submitted all the necessary documents in his final appeal of Grievance No. 1050534.

**A. Exhaustion Requirement**

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e et seq., requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006). However, there are situations in which a grievance procedure may be rendered "unavailable" to an inmate, such as when a prison official thwarts an inmate's ability to use it, *Ross*, 578 U.S. at 643–44, when intimidation by means of "serious threats of retaliation and bodily harm" prevent an inmate from filing, *Rinaldi v. United* States, 904 F.3d 257, 266–67 (3rd Cir. 2018), or when a prison has "rendered its administrative remedies unavailable . . . when it failed to timely (by its own procedural rules) respond to [an inmate's] grievance and then repeatedly ignored his follow-up requests for a decision on his claim," *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

**B. DC-ADM 804**

The Pennsylvania Department of Corrections' general grievance process is set forth in policy number DC-ADM 804, which Defendants attached to their

motion for summary judgment. (Doc. 51-1.) "DC-ADM 804 provides a general, though rigorous, mechanism for inmate grievances." *Moore v. Lamas*, No. 22-1007, 2023 WL 371397, at *2 (3d Cir. Jan. 24, 2023). Among other requirements, the grievance must be signed, dated, legible, understandable, and presented in a courteous manner. DC-ADM 804, §§ 1.A.10, 11. The United States Court of Appeals for the Third Circuit has stated that:

> ADM 804 creates the three-step Inmate Grievance System. First, an inmate must submit a grievance to the Facility Grievance Coordinator. The grievance must include the relevant facts, individuals involved, claims alleged, and relief sought. A different official—the Grievance Officer—reviews the grievance and submits an initial response. The inmate may appeal the initial response to the Facility Manager, who reviews it and issues a decision. The inmate may file a final appeal to the Secretary of Corrections' Office of Inmate Grievances and Appeals. . . . ADM 804 requires an inmate to specify in his grievance any alleged violation of department regulations or other law as well as specify the compensation or legal relief the inmate desires.

*Prater v. Dep't of Corr.*, 76 F.4th 184, 203–04 (3d Cir. 2023).

ADM 804, Section 2(B)(1)(j) requires an inmate appealing a grievance to the Final Review to provide the SOIGA with all the required documentation relevant to the appeal, including:

(1) a legible copy of the Initial Grievance;

(2) a copy of the initial review response/rejection and/or remanded initial review response/rejection;

(3) a legible copy of the Inmate Appeal to the Facility Manager;

(4) a copy of the Facility Manager/designee's decision and/or remanded Facility Manager/designee's decision;

(5) a written appeal to the SOIGA;

(6) failure to provide any of the documentation noted above may result in the appeal being dismissed; and

(7) the copies of the initial review response/rejection and the Facility Manager/designee's decision cannot be handwritten.

DC-ADM 804 § 2(B)(1)(j). DC-ADM 804 also states that "[a]ny documentation submitted in support of the appeal to final review will become part of the official record and will not be returned."

ADM 804 "is the exclusive means of exhaustion," so failure to "follow the full administrative review process under ADM 804" results in a failure to exhaust under the PLRA. *Prater*, 76 F.4th at 204.

**C. Analysis**

Defendants have presented evidence in the form of a Declaration of Keri Moore, the Chief Grievance Officer for the SOIGA, stating that Plaintiff did not include the initial grievance, the initial response, the appeal to the Facility Manager, or the decision or remand of that appeal in his appeal to the SOIGA. (Doc. 51-2, p. 4.) Therefore, Defendants have met their initial burden of presenting evidence that Plaintiff did not properly exhaust his administrative remedies as an inmate's failure to submit the required documents to SOIGA results in the inmate failing to exhaust administrative remedies. *See, e.g., Mack v.*

*Klopotoski*, 540 F. App'x 108, 113 (3d Cir. 2013) (unpublished) (affirming dismissal for inmate's failure to properly exhaust because inmate had failed to include photocopies of his appeals to the Facility Manager and rejecting substantial compliance argument that inmate filed handwritten copies since DC-ADM 804 specifically required photocopies); *Brown v. Smith*, No. 18-193, 2021 WL 4429847, at *8 (W.D. Pa. Sept. 27, 2021), *aff'd on other grounds*, No. 21-3127, 2022 WL 2383609 (3d Cir. July 1, 2022) (collecting cases and holding that, because ADM 804 § 2.B.1.j.1 requires that an appeal include a "legible copy of the Initial Grievance," "courts have held that including illegible documents violates the rule and constitutes a procedural default." (citations omitted)). In *Brown*, the district court found that the plaintiff failed to exhaust administrative remedies because he failed to include a legible copy of his initial grievance with his appeal to the SOIGA while acknowledging that doing so "may appear harsh." *Brown*, 2021 WL 4429847, at *8. The court concluded, nonetheless, that it was "bound by the PLRA to apply the prison's available administrative exhaustion rules, however stringent." *Id.*

The burden then shifts to the non-moving party, Plaintiff, to establish that there is an issue of material fact. Plaintiff has submitted his own affidavit stating that he enclosed copies of the initial grievance, the initial response, the appeal to the Facility Manger, and the decision of that appeal and paid $2.58 postage based

on the weight of the mailing. (Doc. 58-1, p. 1.) The Third Circuit has recently held that affidavits by plaintiff-prisoners are sufficient to establish the existence of an issue of material facts on the issue of exhaustion. *See Timmons v. Bohinski*, -- F.4th --, 2026 WL 2331684 (3d Cir. 2026)

Taking the evidence in a light most favorable to the non-moving party, the court finds that there is an issue of material fact concerning what was included in the final appeal packet sent to SOIGA. This issue of material fact is vital to resolving whether or not Plaintiff properly exhausted his administrative remedies. Therefore, the motion for summary judgment will be denied. However, this denial will be without prejudice.

**D. The Court Will Hold an Evidentiary Hearing on the Issue of Exhaustion**

Very recently, the Third Circuit Court of Appeals has set forth the four options available to district courts to resolve the issue of exhaustion:

> Option 1: A District Court may dismiss an inmate's claim pursuant to Rule 12(b)(6) if the "failure to exhaust under the PLRA is apparent from the face of the complaint." *Talley v. Clark*, 111 F.4th 255, 264 (3d Cir. 2024); *see also Jones*, 549 U.S. at 216, 127 S.Ct. 910 ("[T]he failure of Congress to include exhaustion in terms among the enumerated grounds justifying dismissal upon early screening ... is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim.").
>
> Option 2: Where exhaustion and the merits are not intertwined, a District Court may engage in pretrial factfinding to address exhaustion and unavailability. *See Rinaldi*, 904 F.3d at 265. "It would make sense from an efficiency standpoint that exhaustion determinations be made before discovery, or with only limited discovery." *Small v. Camden*

> *Cnty.*, 728 F.3d 265, 271 n.5 (3d Cir. 2013). This authority in Option 2 includes the ability to make credibility determinations and resolve factual disputes. The parties are entitled to notice and an opportunity to respond before a court employs this procedure. *See Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018). Courts have wide latitude to apply the Option 2 procedure based on the circumstances presented, and a full hearing with live testimony is not required in this Circuit. *See id.*
>
> Option 3: When exhaustion is "intertwined with the merits of a claim protected by the Seventh Amendment," the "parties are entitled to a jury trial" on exhaustion. *Richards*, 605 U.S. at 479, 145 S.Ct. 1793. *Richards* does not foreclose summary judgment procedures, which are permissible under the Act and do not implicate the Seventh Amendment. *See In re Trib. Media Co.*, 902 F.3d 384, 397 (3d Cir. 2018). Whereas pretrial factfinding in connection with Option 2 is discretionary, Option 3 is required by *Richards* when it is on the table due to intertwinement. *Richards*, 605 U.S. at 479, 145 S.Ct. 1793. This case does not require us to draw a definitional intertwinement line. But we have been told that "common factual issues," the "possibility" of an "estoppel effect in a later jury trial," and other circumstances that "might prevent a full jury trial" are among the relevant considerations. *Id.* at 472, 474-76, 145 S.Ct. 1793.
>
> Option 4: Even in the absence of intertwinement, trial courts and defendants may skip past Options 1 and 2 in order to address exhaustion and unavailability by applying "the protections of Rule 56" and, if necessary, resolving factual disputes at a trial. *Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010); *see also Dupree v. Younger*, 598 U.S. 729, 731, 143 S.Ct. 1382, 215 L.Ed.2d 636 (2023); *Renchenski v. Williams*, 622 F.3d 315, 340-41 (3d Cir. 2010).

*Timmons*, 2026 WL 2331684, at *2–3. In this case, the issue of exhaustion needs to be resolved prior to the court addressing the merits of the claims raised in the complaint because the question of exhaustion and the merits of the case are not intertwined. Therefore, the court will proceed with Option 2 and order an

evidentiary hearing on the matter of exhaustion. The court highlights that DC-ADM 804 states that "[a]ny documentation submitted in support of the appeal to final review will become part of the official record and will not be returned," and expects Defendants to produce the entire appeal packet received by the SOIGA in regard to Grievance No. 1050534.

**E. Motion to Compel and Reopen Discovery**

Plaintiff has also filed a motion to compel and a motion to reopen discovery. (Docs. 52, 53.) In the motion to compel, Plaintiff is seeking the production of documentation concerning the cost of religious feasts. However, Plaintiff's requests did not specify the facility that is the subject of his requests. (Doc. 56.) Plaintiff argues that the location was obvious because he was housed at SCI-Waymart. (Doc. 52, p. 2.) However, since Plaintiff is challenging a department-wide change to the religious feast day celebrations, the lack of specificity is an issue that results in the request being overly broad. Therefore, the court will deny the motion to compel. However, this denial is without prejudice.

Plaintiff also filed a motion to reopen discovery following the court making a decision on the motion to compel. (Doc. 53.) Considering that the court will require additional briefing on the issue of exhaustion, the court will deny the motion at this time, but is willing to entertain a motion to reopen discovery should it determine that Plaintiff properly exhausted his administrative remedies.

## CONCLUSION

As the record currently stands, the court finds that Plaintiff has conceded that he did not exhaust Grievance No. 1028334. However, the court cannot make a determination on the question of exhaustion of Grievance No. 1050534. Therefore, the court will deny Defendants' motion for summary judgment without prejudice. However, the court will grant Defendants' motion to bifurcate the briefing in this action to allow the court to fully address the question of administrative exhaustion. Since the court must make a determination regarding exhaustion before the case can be addressed by a jury, the court will hold an evidentiary hearing regarding exhaustion of Grievance No. 1050534. The court will deny Plaintiff's motion to compel and motion to reopen discovery.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 19, 2026